# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**LAURIE A. BEBO,**

    Plaintiff,

  -vs-                                    Case No. 15-C-3

**SECURITIES AND EXCHANGE COMMISSION,**

    Defendant.

## DECISION AND ORDER

On December 3, 2014, following a two-year investigation, the Securities and Exchange Commission issued an Order Instituting Public Administrative and Cease-and-Desist Proceedings ("OIP") against Laurie A. Bebo, formerly the Chief Executive Officer of Assisted Living Concepts, Inc. ("ALC"). The SEC alleges that a statement in ALC's disclosure documents regarding compliance with a lease agreement was false or misleading. The SEC accuses Bebo of committing securities fraud, potentially subjecting her to hundreds of thousands (or even millions) of dollars in civil monetary penalties, in addition to a permanent ban on serving as an officer or director of a publicly-traded company. The hearing before an SEC Administrative Law Judge is scheduled to begin on April 20, 2015.

On January 2, 2015, Ms. Bebo filed this action and moved for a preliminary injunction. Bebo argues that Section 929P(a) of the Dodd-Frank Wall Street Reform and Consumer Protection of 2010 is unconstitutional on its face. Therein, Congress made the SEC's authority in administrative penalty proceedings "coextensive" with its authority to seek penalties in federal court. H. Rep. No. 111-687, at 78 (2010). This arrangement, according to Bebo, violates equal protection and due process because it gives the SEC unfettered discretion through its choice of forum to provide (if federal) or withhold (if administrative) a citizen's Seventh Amendment jury trial right for the same conduct and the same remedies. Bebo also argues that the SEC's choice of an administrative forum violates her procedural due process rights because certain key witnesses – various members of ALC's Board of Directors – are Canadian citizens beyond the subpoena power of the SEC ALJ. Finally, Bebo argues that the SEC's internal administrative proceedings violate Article II's mandate that the executive "take Care that the Laws be faithfully executed," U.S. Const. art. II, § 3, because SEC ALJs are separated from the President by multiple levels of protection from removal. *See Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010).

At Bebo's request, the Court conducted a telephonic status

conference after her motion was fully briefed. The SEC requested oral argument and the opportunity for further briefing. Counsel for Bebo argued that oral argument was not necessary and objected to the request for further briefing. Bebo also alerted the Court to several pre-hearing deadlines that "require the allocation of substantial resources, including a March 13, 2015 deadline for exchanging witness lists and expert reports, and a March 26, 2015 deadline for exchanging exhibits." ECF No. 17. Thus, Bebo's primary concern was obtaining a ruling as soon as possible in advance of these deadlines. The Court denied the SEC's request for oral argument, but granted its request for further briefing. The Court also stated its intention to issue a ruling before March 13, the initial deadline in the lead-up to the administrative hearing.

The Court finds that Bebo's claims are compelling and meritorious, but whether that view is correct cannot be resolved here. This is so because Bebo's claims are subject to the exclusive remedial scheme set forth in the Securities Exchange Act. Bebo must litigate her claims before the SEC and then, if necessary, on appeal to the Court of Appeals for the Seventh Circuit.

**\*\*\***

The Exchange Act provides that a "person aggrieved" by a final SEC

order "may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business." 15 U.S.C. § 78y(a)(1). Review provisions such as this "generally preclude *de novo* review in the district courts, requiring litigants to bring challenges 'in the Court of Appeals or not at all.'" *Altman v. S.E.C.*, 687 F.3d 44, 45-46 (2d Cir. 2012) (quoting *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958)). However, "[p]rovisions for agency review do not restrict judicial review unless the 'statutory scheme' displays a 'fairly discernable' intent to limit jurisdiction, and the claims at issue 'are of the type Congress intended to be reviewed within th[e] statutory structure.'" *Free Enterprise*, 561 U.S. at 489 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 212 (1994)). Thus, a district court may exercise subject matter jurisdiction if "a finding of preclusion could foreclose all meaningful judicial review;" if the suit is "wholly collateral to a statute's review provisions;" and if the claims are "outside the agency's expertise." *Id*.

In *Free Enterprise*, the Court considered an action seeking declaratory and injunctive relief against the Public Company Accounting Oversight Board. The Board was created pursuant to the Sarbanes-Oxley Act of 2002, which placed the Board under the oversight of the SEC and

introduced tighter regulation of the accounting industry. Before holding that Sarbanes-Oxley's dual for-cause limitations on the removal of Board members violates the Constitution's separation of powers, the Court held that § 78y did not deprive the district court of subject matter jurisdiction. *Id.* at 489-91.

Bebo likens her case to *Free Enterprise* because of the nature of her claims. That is, Bebo objects to the existence of the SEC's administrative proceedings themselves and to Dodd-Frank's grant of unfettered discretion to choose the forum in which the SEC will pursue its targets. Similarly, in *Free Enterprise*, the petitioners objected to "the Board's existence, not to any of its auditing standards," and their "general challenge to the Board" was "'collateral' to any Commission orders or rules from which review might be sought." *Id.* at 490. This analogy is not enough to escape the clutches of § 78y because in *Free Enterprise*, there was no Board action pending against the petitioners when they brought suit in district court. Thus, the Court rejected the suggestion that the petitioners should have been forced to "select and challenge a Board rule at random" or "incur a sanction (such as a sizable fine) by ignoring Board requests for documents and testimony." *Id.* "We normally do not require plaintiffs to 'bet the farm … by taking the violative action' before 'testing the validity of the law,' and

we do not consider this a 'meaningful' avenue of relief." *Id.* at 490-91.

Bebo, of course, does not need to induce an administrative proceeding. Instead, Bebo can raise her arguments before the SEC ALJ and on appeal to the Commission. Then, if the Commission rules against her, Bebo can obtain judicial review in the court of appeals. Moreover, the petitioners in *Free Enterprise* could not "meaningfully pursue their constitutional claims" because "Section 78y provides only for judicial review of *Commission* action, and not every Board action is encapsulated in a final Commission order or rule." *Id.* at 490 (emphasis in original). Here, Bebo can seek review of impending SEC action pursuant to § 78y.

Bebo also argues that her case is akin to *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479 (1991). In *McNary*, the Court considered the judicial review provisions for the denial of individual Special Agricultural Worker ("SAW") applications, which required exhaustion of administrative remedies prior to review in the federal courts of appeals. *McNary* held that those provisions applied to "the process of direct review of individual denial of SAW status," not "general collateral challenges to unconstitutional practices and policies used by the agency in processing applications." *Id.* at 492. Yet in *McNary*, there was "no provision for direct judicial review of the denial of SAW status unless the alien is later apprehended and deportation

proceedings are initiated, ..." *Id.* at 496. Thus, "most aliens denied SAW status can ensure themselves review in courts of appeals only if they voluntarily surrender themselves for deportation. Quite obviously, that price is tantamount to a complete denial of judicial review for most undocumented aliens." *Id.* at 496-97.

> That distinction aside, Bebo seizes upon the discussion that follows:
>
>> even in the context of a deportation proceeding, it is unlikely that a court of appeals would be in a position to provide meaningful review of the type of claims raised in this litigation. To establish the unfairness of the INS practices, respondents in this case adduced a substantial amount of evidence, most of which would have been irrelevant in the processing of a particular individual application. Not only would a court of appeals reviewing an individual SAW determination therefore most likely not have an adequate record as to the pattern of INS' allegedly unconstitutional practices, but it also would lack the factfinding and record-developing capabilities of a federal district court.

*Id.* at 497. Therefore, it seemed "plain" in *McNary* that "restricting judicial review to the courts of appeals as a component of the review of an individual deportation order" would be "the practical equivalent of a total denial of judicial review of generic constitutional and statutory claims." *Id.* *McNary* does not apply, however, because it was "addressing a statutory review scheme that provided no opportunity for the plaintiffs to develop a factual record relevant to their constitutional claims before the

- 7 -

administrative body and then restricted judicial review to the administrative record created in the first instance." *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2139 n.11 (2012).

*Elgin* held that the Civil Service Reform Act provided the "exclusive avenue to judicial review" through the administrative process, subject to review in the United States Court of Appeals for the Federal Circuit, "when a qualifying employee challenges an adverse employment action by arguing that a federal statute is unconstitutional." 132 S. Ct. at 2130. The Court declined to resolve whether the Merit Service Protection Board could decide the constitutionality of a federal law because the issue could be "meaningfully addressed in the Court of Appeals that Congress had authorized to conduct judicial review." *Id.* at 2137 (quoting *Thunder Basin*, 510 U.S. at 215). "Even without factfinding capabilities, the Federal Circuit may take judicial notice of facts relevant to the constitutional question. And, if resolution of a constitutional claim requires the development of facts beyond those that the Federal Circuit may judicially notice, the CSRA empowers the MSPB to take evidence and find facts for Federal Circuit Review." *Id.* at 2138.

Bebo complains that she is limited to raising her constitutional arguments as "affirmative defenses" before the SEC ALJ. Even so, the

- 8 -

administrative record can include evidence relevant to an affirmative defense, *see* 17 C.F.R. §§ 201.220, 201.320; in reviewing the ALJ's initial decision, the Commission can order that the record be supplemented, 17 C.F.R. § 201.452; and just like in *Elgin*, the court of appeals can remand for additional fact-finding, § 78y(a)(5). Nor is it relevant, as in *Elgin*, that the Commission may (or may not) lack jurisdiction to entertain constitutional claims.[1] Appellate review in the court of appeals is sufficient.

Ultimately, Bebo's argument regarding the lack of meaningful judicial review lies in her objection to being subject to a procedure that she contends is wholly unconstitutional. But as one judge observed, district court jurisdiction "is not an escape hatch for litigants to delay or derail an administrative action when statutory channels of review are entirely adequate." *Chau v. SEC*, No. 14-cv-1903 (LAK), --- F. Supp. 3d ----, 2014 WL 6984236, at *6 (S.D.N.Y. Dec. 11, 2014). If the process is constitutionally defective, Bebo can obtain relief before the Commission, if not the court of appeals. *See, e.g., Landry v. F.D.I.C.*, 204 F.3d 1125 (D.C. Cir. 2000) (addressing Article II challenge to FDIC's method of appointing

---

[1] While the agency in *Elgin* "repeatedly refused to pass upon the constitutionality of legislation," 132 S.Ct. at 2136, the SEC routinely entertains constitutional claims such as those brought by Bebo. *See In the Matter of Timbervest, LLC, et al.*, S.E.C. Release No. 4003, 2015 WL 242393 (Jan. 20, 2015) (ordering supplemental briefing on the Article II claim advanced herein).

- 9 -

Case 2:15-cv-00003-RTR    Filed 03/03/15    Page 9 of 10    Document 23

ALJs on appeal from a final FDIC Order). Until then, Bebo must "patiently await the denouement of proceedings within the Article II branch." *USAA Fed. Sav. Bank v. McLaughlin*, 849 F.2d 1505, 1510 (D.C. Cir. 1988).

**\*\*\***

This matter is **DISMISSED** for lack of subject matter jurisdiction. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 3rd day of March, 2015.

                                            **SO ORDERED:**

                                            *[signature]*

                                            **HON. RUDOLPH T. RANDA**
                                            **U.S. District Judge**